Application of Anthony SABATINO and Daniel Orlando.

Patent Appeal No. 7850.

United States Court of Customs and Patent Appeals.

Jan. 11, 1968.

Gerrit D. Foster, Paul R. Puerner, Milwaukee, Wis., for appellants.

Joseph Schimmel, Washington, D.. C. (S. Wm. Cochran and Thomas F. Lomont, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 27–29, 33–35, 38, 41, 42, 44–48 and 54 in appellants' application [1] for "Storage Battery Construction and Method of Making Same" as obvious in view of certain prior art under 35 U.S.C. § 103. Claims 42 and 48 have been withdrawn from appeal.

The invention relates in general to a method of making an *internal* electrical connection between a group of plates of positive polarity in one cell of a storage battery and a group of plates of negative polarity in an adjacent cell. The record shows that the conventional arrangement for interconnecting the elements of a storage battery has long been the "post link" construction wherein lead alloy conductors, positioned *externally* of the battery casing, are connected to the plate elements by means of conductor posts extending upwardly through openings in the battery cover. It has been recognized for years, however, that certain substantial advantages—relating generally to manufacturing cost, appearance, durability and lower internal resistance—could be obtained by the use of an *internal*, "through partition" type cell connector which passes through the wall separating the adjacent cells of the battery. According to the specification, prior connections of the "internal" type have been made by (1) inserting a conductor element in an aperture in a cell partition, (2) "sealing" the conductor in the aperture, and (3) then electrically connecting it to the battery elements in the respective cells.

The specification describes appellants' method for making an "internal" cell connection through an aperture in a partition wall of a battery casing:

> Battery elements are positioned in each of the battery compartments which include a strap having a connector lug thereon precast to the elements. Each lug has a sealing face thereon provided with an area adapted for interconnection through said aperture. The elements are positioned in the compartments so that the area on one connector lug is in contact, *directly or indirectly (by an intermediate member)*, with the area on the connector lug in the adjacent compartment through the aperture. These areas are joined by a *pressurized resistance weld* and the aperture is completely and tightly filled with the lug material to form a seal preventing leakage of electrolyte between cells. (Emphasis supplied)

The subject matter is perhaps best understood by reference to claim 27, to which we have added reference numerals keyed to Figs. 3, 17 and 18, illustrative

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 132,660, filed August 21, 1961.

of the direct and indirect contact between connector lugs contemplated by appellants as well as the finished connection, respectively:

27. The method of making a storage battery comprising the steps of:

providing an open top storage battery case having a partition [14; 74] of insulating material therein which divides the case into at least two separate compartments, said partition having an opening [36; 72] therethrough;

providing battery elements, said elements each having a connector strap [22] electrically connected thereto, there being lead projection material [projections 30 and 32 on connector lugs 28; pin 70 between connector lugs 78] for electrically connecting said straps;

positioning said battery elements in each of said compartments with said projection material extending through the partition opening between said straps;

passing an electric welding current [from transformer at top of Fig. 3] through said projection material to soften such material into a deformable mass; and

squeezing said straps together [by such means as clamping jaws 42] during the application of the electric welding current to weld the straps together and to force the softened metal of the projection material into sealing engagement with the wall of the partition opening.

FIG. 17

FIG. 3

FIG. 18

The references are:
Thomson          555,131          Feb. 25, 1896
Mounts         2,327,924          Aug. 24, 1943 [2]
Rigsby         2,906,804          Sept. 29, 1959

The claims were rejected as "unpatentable over Thomson and Rigsby considered together." Rigsby discloses a method of making a "through-partition" intercell connection in storage batteries, and also discusses the state of the art prior to his invention:

Prior constructions of this general form have embodied inter-cell connectors extending through openings in the

2. Under the view we take of this case, it is unnecessary to consider the rejection of certain of the claims as unpatentable over Mounts.

battery casing partitions and welded or "burned" to plate straps in the cells, and bushings or other yieldable sealing means to prevent leakage through said openings. The present invention, however, has been designed to provide an improved and simplified construction which requires no welding or "burning" and no yieldable sealing means.

In the present invention, plate connecting straps [18] at opposite sides of each partition [11] are provided with terminal lugs [17] contacting with said partition, the lugs and partition have registering openings [20, 21] forming a bore therethrough, and a soft metal pin [19] extends through this bore and has heads at its ends tightly engaging the lugs, said pin being expanded into tight contact with the bore wall to not only establish a good electrical connection but to prevent leakage between said pin and said bore wall.

Rigsby states that "longitudinal compression" of the pin expands it into "extremely tight contact" with the walls of the lug bore and causes some of the pin metal to flow into the wall aperture enlargements 22 or similar enlargements which may be present only in the lug bore to form tightly seated circumferential sealing ribs 24. Rigsby forms his pin from battery lead alloy which he discloses is "well adapted to expand and flow as desired when longitudinally compressed."

Recognizing that Rigsby's disclosed method does not employ heating or a welding current while applying pressure to the connecting pin to form the inter-cell connection, the examiner turned to Thomson, who discloses a method for securing or riveting two pieces of plate metal by placing a pin in aligned apertures in the plates and simultaneously supplying heat from an electrical current and pressure to the ends of the pin to cause softening and deformation thereof. Said the examiner:

It would be obvious to one skilled in the art that Thomson's method of making a connection could easily be used to make the inter-cell connection of Rigsby's battery. * * * Connecting inter-cell connectors to plate straps in the cells of a battery to form an integrally connected unit by welding or burning is well known in the prior art as shown in * * * Rigsby.

The board agreed, adding:

We consider the language of * * * [the appealed] claims to be broad enough to include the use of a pin of soft metal protruding through the aperture in the partition wall as shown in Rigsby to provide the electrically conductive and liquid tight joint for the intercell type of battery. The use of heat to soften the pin and facilitate the joint formation would be obvious to any one skilled in the art in view

of Thomson and the prior art acknowledged by Rigsby.[3]

Appellants do not disagree with the board's interpretation of the breadth of the claims. They contend, however, that numerous prior art patents cited by them to the examiner establish that the claimed method solved a longstanding problem in the industry which many skilled engineers had unsuccessfully attempted to solve. They attach "great significance" to the affidavit of one Schaefer, former Chief Battery Engineer of appellants' assignee, Globe-Union Inc., who averred that, to his knowledge, the battery industry had not produced any commercially successful intercell connected battery of the "through partition" type, including the battery constructions and/or methods of manufacture described in those patents,[4] primarily because of "manufacturing problems" or "the lack of an adequate seal at the partition aperture." In their view:

* * * *none* of the prior patents of record * * * which relate in any way to the battery manufacturing art shows or suggests the critical feature of applicants' invention, i. e., *the simultaneous application of heat and pressure to the lead material inside the aperture which has proven effective to produce a fluid-tight connection having superior characteristics of low electrical resistance by a few easily performed steps.* * * *

* * * * * *

The present invention did *not* promptly follow on the heels of a problem as it arose in the industry as is usually the case. Quite to the contrary, the several substantial advantages to be attained by a through-partition intercell connector were universally known in the battery art for over 40 years. The record is replete with examples of the numerous attempts by most of the major battery manufacturers to solve the problem. Of great significance is the fact that none of the prior attempts proved commercially feasible until applicants came forth with their invention.

Appellants further rely on the affidavits of Leighton, vice-president—marketing of Globe; Elkin, chief electrical engineer, American Motors Corp.; and Zifchak, manager, battery department, Atlas Supply Co. Leighton attested to the sales growth of Globe's "H.V." line of "through-partition" batteries and the cost reduction realized over conventional

---

3. The board did not sustain the rejection of certain other claims, directed to appellants' preferred method in which connector strap lugs having *integral* projections to facilitate *direct* contact of the lugs are employed to make the intercell connection.

4. The patents cited in the record by appellants disclose various techniques to seal a pin connector employed in making a through-partition connection, including (1) a pin having a flange embedded and vulcanized in the partition wall (Willard 1,425,924 issued 1922); (2) use of nuts and a bolt to connect the battery plate straps through an aperture in the partition wall, with a rubber washer between the nut and wall to prevent leakage (Kyle 2,002,267 issued 1935); (3) a pin inserted within a rubber bushing in the wall aperture and welded to the connector lugs attached to the plates (Hopkins 2,180,959 issued 1939); (4) a connecting rod which is inserted through the partition aperture, deformed or compressed by a tool to form shoulders abutting against the partition wall and *subsequently* "fused" to connector lugs by "resistance heating" or "lead burning" (Doyle 2,942,059 issued 1960). The latter patent, in describing the advantage of its disclosed construction over the prior art, states:

It will be noted that the present method of assembly is different from any prior art methods wherein connector elements pass through the cell partitions. In all of the prior art devices, these connector elements are associated with the partition by means of resilient rubber bushings, nuts and gaskets and other devices, etc., *which have never provided a satisfactory fluid tight seal.* * * * The present method of assembly assures permanently sealed cell connectors wherein the upsetting operation creates permanent deformation of the connectors which assure a fluid tight joint under any and all conditions of use. * * * (Emphasis supplied)

"post link" constructed batteries. Elkin and Zifchak characterized the commercial impact of Globe's "H.V." battery construction as one of the most significant breakthroughs in battery construction they have encountered.

■ The environmental circumstances in which appellants made their invention, as reflected in the patents cited by them, and the commercial success of the batteries produced by one of the processes within the scope of the claims, as set forth in the affidavits, do, in proper circumstances, have some relevance to the determination of obviousness or unobviousness of the claimed subject matter. Graham v. John Deere Co., 383 U.S. 1 at 15, 16, 86 S.Ct. 684, 15 L.Ed.2d 545. Analogous to the situation the Court found in *Graham* 383 U.S. at 34, 86 S.Ct. 684, however, the evidentiary value of the many apparently unsuccessful attempts to provide a readily manufactured, leak-proof seal in the partition aperture of the battery appears to be well-tempered by the fact that those attempts occurred *before* Rigsby, the most pertinent reference, became available to those in the art. See In re Caveney, 55 CCPA ——. 386 F.2d 917.

■ Appellants' attempt to depreciate Rigsby's use of a connector pin to make his intercell connection as the "same basic approach" used by earlier workers in the field ignores the fact that Rigsby, unlike those earlier workers, introduced the concept of applying pressure to the ends of the pin to facilitate formation of a tight·seal with the aperture wall—a concept appellants appear to have essentially adopted as part of their process shortly after acquiring actual knowledge of the Rigsby invention. While there is some evidence in the record to suggest that employees of appellants' assignee had difficulty in carrying out the Rigsby process because some of the partition walls cracked during or after compression of the pin, there is no evidence of

unsuccessful attempts to deal with that problem. In any event, we agree with the Patent Office position that it would be obvious to one of ordinary skill in the art to alleviate that problem by applying heat to increase the flowability of the pin and lessen the pressure required to effect an adequate seal, particularly in view of Thomson. We have considered, in that regard, appellants' arguments that the Thomson patent represents non-analogous art. However, in view of the various heating or welding techniques which have been previously employed to attach connecting pins to the connecting lugs or battery elements in a "through partition" type battery, as noted by Rigsby and the other patents cited by appellants, we think there is sufficient suggestion to those in the art to turn to the welding art, represented here by Thomson, to determine what other techniques were available.

Turning to the evidence of commercial success, the difficulty we find with appellants' contentions is that the invention as practiced commercially admittedly is somewhat narrower than the scope of the appealed claims.[5] It seems to us that the board has given tacit recognition to the commercial success of appellants' invention in allowing claims specifically directed to that process and not suggested by the prior art, while correctly holding that the present claims are sufficiently broad to encompass that which would be obvious to one of ordinary skill in the art at the time appellants made their invention.

We think the examiner and board properly found other limitations appearing in certain of the claims to be obvious to one of ordinary skill in the art. With due regard for appellants' arguments, we find no reversible error in the decision below and it is affirmed.

Affirmed.

SMITH, Judge, concurs in the result.

5. Appellants state in their reply brief that the commercial batteries referred to in the affidavits relating to commercial success were made in accordance with the preferred method of the invention in which an integral projection on the connector lug face is employed to effect direct contact.